## SUPERIOR COURT.

### GEORGE CASSARD agt. ELISHA W. HINMANN.

A *contract* to purchase and sell pork, to be delivered at a future period, for a
  certain sum per barrel, where it is the intention of the parties at the making
  of the contract, that it shall not be specifically performed by an actual delivery
  of the pork, but at its maturity the *difference* between the market value of the
  pork and the price agreed upon, shall be paid by one party to the other as per-
  formance or satisfaction of the contract, is *illegal* and *void*, under the statute
  of betting and gaming. (1 *R. S.* 661, § 8.)

*New-York Special Term, Nov.*, 1856.
DEMURRER to separate parts of the defendant's answer.

MR. CARTER, *for plaintiff.*
MR. C. TRACY, *for defendant.*

HOFFMAN, Justice.    The complaint in this action states, that
the defendant, Hinmann, on the 13th of May, 1856, agreed to

sell to the plaintiff 500 barrels of mess pork, deliverable all the month of September, 1856, at the rate of $17 per barrel, cash on delivery: the seller to give the buyer five days' notice to receive and pay for the same. The contract is dated in New-York. The complaint avers the expiration of the time agreed upon; that the defendant had omitted to give the notice; a demand for the delivery of the pork, and a refusal. The plaintiff asks judgment for his damages.

The defendant sets up several defences of separate character in his answer, two of which the plaintiff has demurred to for insufficiency.

The first part of the answer demurred to is as follows:—

*Third,* That, at the time of the contract, the defendant was not a dealer in pork, nor did he possess or control the pork mentioned in the contract, nor any part of it, which the plaintiff knew. That it was not the intention of the defendant to make any actual sale or delivery of pork to the plaintiff, nor was it the intention of the plaintiff actually to buy or receive any pork from the defendant. That it was the mutual design and intention of the plaintiff and defendant, at the making of such contract, that the same should not be specifically performed, in whole or in part; but, on the contrary, at the maturity of such supposed contract, the difference between the market value of the pork therein mentioned and the price of the same fixed in the said contract, should be paid by one party to the other as performance or satisfaction of said supposed contract. That the market price of pork in the then future September was, at the date of the contract, contingent and uncertain—and a chance; and the said contracts were not actual bargains and agreements for the sale of actual property, but were mere wagers on such future price of pork, and on the chance of such future price, and were gambling transactions. That therefore the contract was illegal and void, and contrary to the statute in such cases provided, and repugnant to the common law.

1st. It is admitted by the counsel of the defendant, that the mere fact of the non-possession of goods or chattels, at the time

of a contract of sale, does not avoid the contract.   In *Stanton* agt. *Small*, (3 *Sandf. S. C. Rep.* 230,) the court say, " Many moralists doubt the policy of permitting a party to contract for the sale of goods which he does not own at the time of making the contract, because it partakes of the nature of a gambling transaction; but it is now well established, that a contract for the sale of goods to be delivered at a future day, is not invalidated by the circumstance that, at the time of the contract, the vendor neither has the goods in his possession, nor has entered into any contract to buy them, nor has any reasonable expectation of becoming possessed of them by the time appointed for the delivery, otherwise than by purchasing them after making the contract." (*Hebblewhite* agt. *M'Morine*, 5 *Mees. & Wels.* 462.)   The learned judge adverts to the *nisi prius* decision of Chief Justice ABBOTT, in *Bryan* agt. *Lewis*, and states that it had been overruled.   He notices the stock-jobbing act, as to sales of stock without actual possession, and says, " The lawmaking power has not seen fit, by similar provisions, to regulate or embarrass ordinary commercial transactions."

But it is insisted that the present one is widely distinguishable; that the answer does bring the case within the prohibition of a statute.   The article entitled, " Of Betting and Gaming," is referred to, (1 *R. S.* 661, § 8.)   By that section it is declared, " that all wagers, bets, or stakes, made to depend upon any race, or upon any gaming by lot, *chance, casualty, or contingent event whatever,* shall be unlawful.   All contracts for or on account of any money, or property, or thing in action, so wagered, bet, or staked, shall be void."   The question is of much importance.

The law of 1813 (1 *R. L.* 225, § 5—*the act to prevent horseracing*) was, as far as it can relate to the present question, as follows : " That every contract hereafter to be made or entered into for or on account of any sum or sums of money or other thing, bet or staked, or depending on any such race or races, as aforesaid, or concerning the same, *or for or on account of any gaming by lot or chance of any kind, or under any description whatever, shall be deemed and adjudged void in law.*"

In *Bunn* agt. *Riker*, (4 *John. Rep.* 420,) Justice SPENCER quoted this clause of the act, and observed, he apprehended that under the terms gaming by lot or chance, betting on a contingent event could not be included. Betting on any event does not, in common parlance, mean gaming. He compares the statute with that of 9 *Anne*, c. 14; shows that actions on wagers had been sustained in England, notwithstanding that statute; and concludes, that betting on a contingency does not mean gaming. Betting upon an indifferent subject, without playing a play of lot or chance, did not mean gaming within the act.

We find that the Revised Statutes make the important difference of adding to the old provision the words, *casualty or contingent event whatever*. And it is added that all contracts in regard to money, property, or things in action, so wagered, shall be void.

It is needless to state the reasoning of the judges who decided the case of *Bunn* agt. *Riker*: some wagers, and that in question, viz., upon a presidential election, were held to be illegal. Lord MANSFIELD's observations in *Da Costa* agt. *Jones*, are quoted : " Whether it would not have been better policy to have treated al. wagers originally as gaming contracts, and to have held them void."

The Revised Statutes seem to have been prepared, in this particular, to meet and alter Judge SPENCER's propositions.

I have searched carefully, but without success, for any decision in our courts since 1830, which bears upon the present question. The section has been canvassed in numerous cases, but none appear apposite to the present. (5 *Wend.* 250 ; 3 *Denio*, 163, 340 ; 5 *id.* 365.)

The counsel of the defendant has referred to the English statute, (8 & 9 *Vict. chap.* 109, 1845,) and to the case of *Grisewood* agt. *Bain*, (20 *Eng. L. & Eq. Rep.* 290,) as decisive in his favor.

The language of the English statute is, " All contracts or agreements, whether by parol or in writing, by way of gaming or wagering, shall be null and void."

The important case referred to first came before the court in November, 1851, (8 *Eng. L. & Eq.* 415; 21 *Law J. Rep. U. S.* 46.) The declaration set forth a contract to deliver railroad shares at a certain price, at a future specified day; that, in the interim, the shares had greatly increased in price, and on-the day fixed for the delivery were of the value stated, which made a difference upon the number contracted for of £1,074 11 0. That, after the date of the contract, and before the day of fulfilment, it was agreed that the actual delivery should be dispensed with, and the contract so far annulled, and in place thereof, that the difference in value on the day should be paid.

To this a plea was interposed, that the alleged contract was and is a contract between the plaintiff and the defendant, by way of gaming, contrary to the statute then and still in force, and that it was made after the year 1847. (8 & 9 *Vic. c.* 109.) This plea was held bad on demurrer.for want of particularity.

It seems that other pleas had been put in. One was that the contract was by way of wagering on the price of the shares, and were merely colorable; and that it never was intended that they [said shares] should be bought and sold, but was a mere wager.

The cause went down for trial before the chief justice after Hilary Term, 1852. It appeared that the plaintiff was a stock and share jobber in London; that the defendant had contracted to sell and to re-purchase the shares in the declaration mentioned, and that there had been former dealings between the parties of the same character, no shares passing, but merely settlement of differences according to the usual course of speculators at the stock exchange.

The lord chief justice left it to the jury to say what was the plaintiff's intention at the time of making the contract, whether either party really meant to purchase or to sell the shares in question; telling them, that if they did not, the contract was, in his opinion, a gambling transaction, and void.

The jury found for the defendant, and the cause came up on a motion for a new trial.

The court held the direction to the jury was right.

CRESSWELL, Justice, said, "That the contest was, whether the agreement was a *bona fide* contract, to buy and sell, which each party meant at the time to perform. The evidence fully warranted the conclusion, that there was no real contract of sale, and that the whole thing was to be settled by payment of differences."

The chief justice said, "That he meant to ask the jury what was the intention of the parties as understood by both of them at the time of entering into the contract. The transaction was clearly a gambling one."

In the case of *Rourke* agt. *Short*, (5 *Ellis & Blackburn*, 904, *Jan.* 1856, Q. B.,) the declaration was for goods bargained and sold, and a plea set up a transaction in detail, which it averred was by way of gaming and wager, and contrary to the statute, and upon which the goods were delivered. It appeared on the trial that the plaintiff offered to sell the defendant a parcel of rags, at the price of 6s. per cwt. The plaintiff said the defendant had sold a former lot to them for 5s. 9d. The defendant said it was 6s., and the present lot was of inferior value. It was then agreed that the matter in dispute should be decided by one Magee, and that if Rourke, the plaintiff, was wrong, the lot should be charged at 3s. only; if Short was wrong, at 6s. There was only an agreement that the loser was to pay a gallon of brandy to Magee. He decided for the plaintiff.

The defendant refused to accept the rags, and pay the 6s., but offered 5s.

The judge, at the trial, thought it was a wager contract within the act. He directed a verdict for the defendant on this issue, with liberty to plaintiff to move to enter a verdict on it; power being reserved to the court to draw inferences.

COLERIDGE, Justice, says, "The question is, whether this was merely a stipulation for the sale and purchase of goods at a price to be regulated by ascertaining a past event, or a wager on that event. My lord has shown it to be a wager. The parties make the new price a vehicle for a risk upon the former event. They say, let us ascertain the price of the former goods, and if that was 5s. 9d., these goods shall be sold

Cassard agt. Hinmann.

at 6s.; but if the former price was 6s., these shall be sold at three shillings."

The allegation of the plea was, that 6s. was more than the real value, and three shillings less.

The analysis of the case appears to be this: The plaintiff says, I bet that the price of the former goods was 5s. 9d. If I lose, I will pay you by giving goods worth six shillings for three. The defendant bet that the price was 6s., and agrees, if he loses, to pay his loss by giving 6s. for the lot—one shilling more than he valued them at. The price, then, of the sale depended on a wager.

If our statute is of the same import with the English, these cases are almost directly in point; and although we are not bound by them, they would be entitled to great consideration and respect.

In my judgment the statutes are, in substance and import, the same. And I think the cases contain solid principles of interpretation and valuable guides to decision.

It is objected by the plaintiff that the answer is defective in proper averments to bring the case within the statute against gaming and wagers—supposing a case like the present can be within that act. But I think that the precedent of the plea in *Grisewood* agt. *Bain*, is decisive of this question. There are but two differences pointed out by counsel; one, that it is not said to have been by way of wager; and the other, that it was not, is not stated to have been colorable. But in this answer it is averred that the contracts were mere wagers on the future market price of pork, and were contrary to the statute in such case provided. As matter of pleading, this is sufficient.

The result is, that this part of the answer presents a legal defence, and the demurrer to it is not well taken.

I have considered this case with care. I have sought to guard myself against the strong impression which a transaction such as the answer states is calculated to create. If this can be sustained—if there is neither common law to reach, nor statute to condemn it, the unbridled and defiant spirit of speculation, which daily scorns and violates the stock-jobbing act,

will be extended to all the articles of trade, and gambling in these become as common as legitimate dealing. I rejoice that a court of justice is able to do this at least—to condemn the offence—to annul the contract; and to clear the law from the stain of enduring a practice teeming with temptation and disgrace to those engaged in it, and with baneful influences upon the efforts of the honest and just.

Demurrer overruled.

Decision affirmed at general term—Judge SLOSSON delivered the opinion.